1  **WO**

2

3

4

5

6

7

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE DISTRICT OF ARIZONA**

10

11  State of Arizona, et al.,                    No. CV11-0296-PHX-DGC

12                     Plaintiffs,

                                                **ORDER**
13  vs.

14  Tohono O'odham Nation,

15                     Defendant.

16

17       This lawsuit concerns plans by Defendant Tohono O'odham Nation ("the Nation")

18  to construct and operate a major casino on unincorporated land within the outer

19  boundaries of the City of Glendale, Arizona.  The State of Arizona, the Gila River Indian

20  Community, and the Salt River Pima-Maricopa Indian Community have sued to enjoin

21  the casino, arguing that it would violate the compact between the State and the Nation as

22  well as promises made by the Nation during negotiation of and public voting on the

23  compact.

24       The Nation moved to dismiss Plaintiffs' initial complaint (Doc. 24), but that

25  motion was rendered moot when Plaintiffs filed an amended complaint (Doc. 26).  The

26  Nation now moves to dismiss the amended complaint.  Doc. 33.  The motion has been

27  fully briefed (Docs. 33, 37, 38), and the Court heard oral argument on June 3, 2011.  For

28  the reasons stated below, the Court will grant the motion in part and deny it in part.

## I.    Background.

The Nation purchased a parcel of land that had not been incorporated into the City of Glendale but was within the City's outer corporate limits ("the Property").  Doc. 26 ¶ 57.  The Nation subsequently petitioned the United States Department of Interior ("DOI") to take a portion of the Property known as Parcel 2 into trust for the benefit of the Nation, an act that would make Parcel 2 reservation land potentially eligible for gaming.  *Id.* at ¶ 59.  The Nation has stated its intention to open a casino on the land and has published plans for the casino.  DOI made a final decision to take Parcel 2 into trust, but did not decide whether the parcel is eligible for gaming under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2719(b)(1)(B)(i).  Doc. 26 ¶¶ 61, 63.

Plaintiffs and others have opposed DOI's trust decision in a set of related cases consolidated before this Court in CIV 10-1993 *Gila River Indian Community v. United States* ("*Gila River*").  On March 3, 2011, the Court held that DOI's decision to take Parcel 2 into trust was lawful.  *Gila River*, Doc. 133.  Plaintiffs and others appealed that decision, and the appeal is now pending before the Ninth Circuit Court of Appeals.  On May 3, 2011, the Court stayed the transfer of Parcel 2 into trust pending the outcome of the appeal. *Gila River*, Doc. 162.

Plaintiffs filed this suit on February 14, 2011, and amended the complaint on April 22, 2011.  The amended complaint asserts that gaming on Parcel 2 should be enjoined even if Parcel 2 ultimately is taken into trust by DOI.  The facts alleged in Plaintiffs' amended complaint, which must be taken as true for purposes of this motion to dismiss, are as follows.

In 1999, when negotiations for new gaming compacts began between the State of Arizona and 17 native American tribes located throughout the State, the tribes joined together to negotiate a standard form of compact that would apply to each of them.  Doc. 26 ¶¶ 22, 23, 29.  In 2002, after more than two years of negotiations, key provisions of a uniform compact were placed before Arizona voters as Proposition 202.  *See id.* ¶ 30.  In seeking support for Proposition 202, Governor Jane Hull issued a press release on

February 20, 2002 stating that under the compact negotiated with the tribes there would be "[n]o additional casinos allowed in the Phoenix metropolitan area." *Id.* at ¶ 31. A publicity pamphlet published by the Arizona Secretary of State also contained statements by the governor that "Proposition 202 ensures that no new casinos will be built in the Phoenix metropolitan area," and that "Proposition 202 keeps gaming on Indian Reservations and does not allow it to move into our neighborhoods." *Id.* at ¶ 42.

The 17 tribes, including the tribal parties in this litigation, also sought to build support for Proposition 202 by forming a coalition named "Arizonans for Fair Gaming and Indian Self Reliance" ("Coalition"). *Id.* at ¶ 36. The Coalition provided voters with a document titled "Answers to Common Questions," which stated that "[u]nder Proposition 202, there will be no additional facilities authorized in Phoenix." *Id.* at ¶ 37. This statement was repeated publicly by several proponents of the initiative, including State officials. *Id.* at ¶ 40. The Nation's Chairman supported Proposition 202, stating on September 25, 2002 that the new compact would not "open gaming into cities." *Id.* at ¶ 41. Arizona voters approved Proposition 202 in November 2002. *Id.* ¶ 30. Each of the 17 tribes then signed compacts incorporating provisions approved in Proposition 202. The Nation's compact, which will be referred to in this order as "the Compact," included the same terms as the compacts signed by other tribes.

While participating in negotiation of the Compact with the State and the other Arizona tribes, and during the Proposition 202 campaign, the Nation had an undisclosed plan to build a casino in the Phoenix metropolitan area. *Id.* ¶¶ 48-50. A corporation owned by the Nation – Rainier Resources, Inc. – purchased the Property in Glendale within months of Proposition 202's passage. *See id.* ¶¶ 54, 55. The transaction was structured to conceal the Nation's interest in the Property. *Id*, ¶ 55. The Nation kept its ownership of the Property secret for more than five years, during which time a high school was opened across the street from the site and other development occurred without knowledge that gaming may someday occur on the Property. *Id.* ¶ 56.

In January of 2009, Rainier Resources, Inc. conveyed the Property to the Nation

1  and the Nation asked DOI to take the property into trust for the benefit of the Nation. *Id.*

2  ¶¶ 57, 59. The request included a cover letter indicating that "[t]he Nation intends to use

3  portions of the property for gaming purposes pursuant to IGRA." *Id.* at ¶ 60. In July of

4  2009, the Nation narrowed its trust request to Parcel 2. *Id.* at ¶ 61.

5          Plaintiffs allege that gaming on Parcel 2 would violate the implied terms of the

6  Compact and would be contrary to representations made by the Nation while negotiating

7  the Compact with the State and other tribes and while actively representing to voters that

8  the Compact would not allow further gaming in the Phoenix metropolitan area. The

9  amended complaint contains seven causes of action: (1) gaming in violation of the

10  Compact; (2) gaming in violation of the covenant of good faith and fair dealing implied

11  in the Compact; (3) promissory estoppel; (4) a request for injunctive relief to prevent

12  gaming on Parcel 2; (5) fraud in the inducement of the Compact; (6) material

13  misrepresentation; and (7) anticipatory repudiation. Doc. 26. Plaintiffs seek injunctive

14  relief, reformation, and a declaration that the Compact is voidable. *Id.* at 23. The Nation

15  moves to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6). Doc. 33.

16  **II.  Legal Standard.**

17          In resolving a motion to dismiss for lack of subject matter jurisdiction under

18  Rule 12(b)(1), the Court is not limited to the allegations in the pleadings if the

19  "jurisdictional issue is separable from the merits [the] case." *Roberts v. Corrothers*, 812

20  F.2d 1173, 1177 (9th Cir. 1987). "A Rule 12(b)(1) jurisdictional attack may be facial or

21  factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see*

22  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). In a facial

23  attack, like the one asserted here, "the challenger asserts that the allegations contained in

24  the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for*

25  *Everyone*, 373 F.3d at 1039.

26          When analyzing a complaint for failure to state a claim to relief under

27  Rule 12(b)(6), the well-pled factual allegations "are taken as true and construed in the

28  light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067

(9th Cir. 2009) (internal quotation marks and citation omitted).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. Discussion.

### A. Sovereign Immunity.

The Nation argues that this entire suit is barred by sovereign immunity.  Doc. 33 at 10-11.  The Nation asserts that under IGRA, specifically 25 U.S.C. § 2710(d)(7)(A)(ii), it can be subject to suits involving gaming only on "Indian lands."  Doc. 33 at 10:27-28.  Because Parcel 2 has not yet been taken into trust by the DOI and therefore is not "Indian lands," the Nation argues that IGRA's narrow abrogation of sovereign immunity does not apply.  *Id.* at 11.

Plaintiffs respond that § 2710(d)(7)(A)(ii) describes the type of claims that may be brought, not the timing of the claims.  Doc. 37 at 9.[1]  Plaintiffs concede that this lawsuit could be mooted by a Ninth Circuit decision that DOI may not take the Property into trust, but assert that such potential mootness is only speculative.  *Id.* at 22-25.  Plaintiffs further concede that DOI "has not yet actually taken Parcel 2 into trust," but argue that this does not "alter the character of the acts this suit seeks to enjoin" and that the threatened injuries Plaintiffs seek to prevent are exactly the type of injuries IGRA allows to be litigated.  *Id.*

The Court agrees with Plaintiffs.  Section 2710(d)(7)(A)(ii) grants district courts jurisdiction over "*any* cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact . . . that is in effect."  (emphasis added).  Congress did include one temporal limitation on this abrogation of tribal sovereign immunity – it required that the suit concern a compact "that is in effect."  But Congress did not include a similar temporal

---

[1] Citations to pages in docketed pleadings are to page numbers applied at the top of each page by the Court's electronic filing system, not to page numbers at the bottom of the page.

1    limitation on when the land at issue in the suit must become Indian lands.  Instead, it
2    focused on the nature of the claim:  "to enjoin a class III gaming activity located on
3    Indian lands."  That is precisely what this lawsuit seeks to do.  Congress extended the
4    abrogation to "any" lawsuits "initiated" by a State or Indian tribe to enjoin gaming
5    activity on Indian lands, but without specifying when the lawsuit must be "initiated."
6    Plaintiffs have initiated this lawsuit to enjoin class III gaming on Indian lands owned by
7    the Nation in the Phoenix metropolitan area – precisely the kind of lawsuit for which
8    Congress abrogated sovereign immunity in § 2710(d)(7)(A)(ii).

9        The Nation correctly notes that a congressional abrogation of tribal sovereign
10   immunity must be clear.  *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 691
11   (9th Cir. 2004).  The Nation does not dispute, however, that the general nature of the
12   claim in this case falls clearly within the abrogation found in IGRA:  the lawsuit seeks to
13   enjoin gaming on Indian lands.  The Nation essentially argues that the lawsuit is
14   premature, that it may not be brought until the land actually is taken into trust by DOI.
15   But as already noted, the language of § 2710(d)(7)(A)(ii) does not place such a temporal
16   limitation on when a lawsuit may be "initiated" or when land must actually become
17   "Indian lands."  Moreover, although ambiguities in an abrogation of tribal sovereign
18   immunity must be resolved in favor of the tribes, *South Dakota v. Bourland*, 508 U.S.
19   679, 687 (1993), the Court finds that this statute is not ambiguous.  It expressly permits
20   "any" suit to enjoin gaming on Indian lands.

21       It is true that Parcel 2 had not been taken into trust when this lawsuit was filed and
22   therefore did not then qualify as "Indian lands."  But this does not alter the nature of the
23   claim asserted by Plaintiffs – to enjoin gaming on Indian lands.  Moreover, DOI has
24   decided that Parcel 2 will be taken into trust and this Court has upheld that decision.  *Gila*
25   *River*, Doc. 133.  The Nation has declared its intention to game on the land.  The fact that
26   Parcel 2 is not yet in trust is an issue of ripeness, not a question of sovereign immunity.[2]

27   _____

28       [2] On May 27, 2011, the Nation asked the National Indian Gaming Commission

The Nation's reliance on *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237 (11th Cir. 1999), is misplaced.  IGRA's abrogation of sovereign immunity did not apply in that case because Florida's claims were based on the absence of a compact.  *Id.* at 1240.  The Nation does not dispute that the claims in this lawsuit are based on alleged violations of the Compact "that is in effect" as required by § 2710(d)(7)(A)(ii).

## B.   Ripeness.

The Nation argues that the claims are not ripe for adjudication because Parcel 2 may never be taken into trust by DOI and the Nation may never actually be permitted to engage in gaming on the land.  Doc. 33 at 11-13.  The Nation therefore contends that harm to Plaintiffs is not imminent and the Court's adjudication on the merits would be an advisory opinion.  *Id.* at 12:20-28.

Plaintiffs respond that this is a prudential, rather than a constitutional, ripeness argument, and that prudential ripeness considerations do not divest the Court of jurisdiction.  Doc. 37 at 10.  Plaintiffs argue that waiting for the Ninth Circuit to rule on DOI's trust decision will not render the issues more concrete than they are today, that the dispute between the parties is not hypothetical, and that Plaintiffs will be harmed by delaying the resolution of this case.  *Id.* at 11-12.

The doctrine of ripeness operates to prevent premature judicial decisions.  *See Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  Where administrative action is involved, ripeness also "protects the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Id.* at 148-149.  The ripeness doctrine also prevents courts from "entangling themselves in abstract disagreements over administrative policies."  *Id.* at 148.

---

("NIGC") to approve an amendment to the Nation's gaming ordinance with respect to Parcel 2.  Approval of that ordinance requires an "Indian lands" determination by NIGC.  *See North Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 746 (9th Cir. 2009).  The fact that Parcel 2 is not yet in trust did not dissuade the Nation from seeking the approval.  Nor does it dissuade the Court from concluding that this lawsuit challenges gaming on Indian lands within the clear meaning of IGRA.

Ripeness involves a two-factor test: (1) whether the issues are fit for judicial decision, and (2) whether the parties would suffer hardship if judicial consideration is withheld. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). If a claim is not ripe, a federal court generally does not have subject matter jurisdiction, *see Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997).[3]

### 1. Fitness for Judicial Decision.

Whether an issue is fit for judicial decision depends on whether the decision turns on purely legal questions, whether further administrative action will be taken, and whether the decision depends on future events that are uncertain or may not occur. *See Abbott Labs*, 387 U.S. at 149-152; *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989); *Richardson*, 124 F.3d at 1160-61; *see also Texas v. United States*, 523 U.S. 296, 300 (1998).

The issues presented in this case are both legal and factual, but the Court does not view this factor as suggesting the claims are not fit for judicial decision at this time. Other than the possibility that the Ninth Circuit might reverse this Court's approval of DOI's trust decision, which will be addressed below, the Nation does not argue that issues raised in the amended complaint are somehow unfit for judicial decision.

Nor does the need to defer to agency decision-making render this case unripe. Other than the "settlement of a land claim" issue addressed below, on which the Court will withhold decision until DOI and NIGC have acted, this case does not raise issues that will be considered by administrative agencies.

DOI's decision to take Parcel 2 into trust is on appeal before the Ninth Circuit.

---

[3] The Nation does not mention constitutional ripeness in its opening brief, and Plaintiffs therefore asserted in their response that only prudential ripeness was at issue. Doc. 37 at 10. In its reply, the Nation did not disagree. Doc. 38 at 6-7. During oral argument, the Nation asserted for the first time that it is raising both constitutional and prudential ripeness. Because the Nation has presented no argument or authority to show a lack of constitutional ripeness, and because the Court otherwise concludes that this case is ripe for reasons to be discussed in this order, the Court cannot accept the Nation's largely-silent constitutional ripeness argument.

This Court has upheld that decision and thinks reversal is unlikely. It is possible, of course, that the Court of Appeals could disagree with DOI and this Court and conclude that Parcel 2 cannot be taken into trust, but this possible development does not make this case unripe. Questions of jurisdiction and justiciability ordinarily depend on the facts that exist when a complaint is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992). Plaintiffs' amended complaint was filed after this Court's decision in *Gila River*, at a time when DOI could have taken Parcel 2 into trust despite the pendency of the appeal. It was not until this Court entered a stay on May 3, 2011, that the transfer was barred pending appeal. Thus, the issues in this case were ripe when the amended complaint was filed, and the Nation has cited no case for the proposition that a ripe suit becomes unripe due to post-filing developments.

The Nation also argues that it will take some time for gaming to occur on Parcel 2 even after it is taken into trust by DOI. So long as the occurrence of class III gaming is not merely hypothetical or speculative, however, mere lapse of time does not make the claims unfit for judicial review in this case. *Cf. Crow Tribe of Indians v. Mont.*, 819 F.2d 895, 903 (9th Cir. 1987) ("[I]t is not necessary to await the consummation of a threatened injury to obtain preventive relief" (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).

### 2. Hardship.

Plaintiffs allege in the amended complaint that the Nation has breached the compact by "planning, announcing, and seeking to put into operation a new gaming facility in the Phoenix metropolitan area" – actions that have already occurred. Doc. 26 ¶ 101. The amended complaint further alleges that Plaintiffs "each have an immeasurable interest in the political compromise among tribes and the State embodied in the compacts, and continued violation of the Compact by the Nation will destroy that delicate balance that the voters approved." *Id.* ¶ 110. The amended complaint thus alleges injury arising from actions that have already occurred. These allegations sufficiently identify a direct effect on Plaintiffs that satisfies the hardship requirement of ripeness. *See Ohio Forestry*

*Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733-34 (1998) (suggesting that "significant practical harm upon the interests that [a plaintiff] advances" is an important consideration, and that a claim would be ripe if it challenges action that plays a causal role in the harm alleged to be imminent or to have occurred). As already noted, the Court need not await the consummation of other threatened injuries (*see* Doc. 26 ¶¶ 106, 109, 110) before granting preventive relief. *See Crow Tribe*, 819 F.2d at 903.

Finally, the Court notes that this is not a premature, abstract, or hypothetical lawsuit without fully engaged parties or fully developed issues. Two other substantial cases related to the Nation's casino plans are pending before this Court (CIV 10-1993 and CIV 11-279), legislation has been passed by the State of Arizona to prevent gaming on Parcel 2, and maneuvering continues before administrative agencies and the Court of Appeals. The battle is joined on all fronts, the cases have generated considerable public interest, and the issues are well framed by competent counsel. The only basis for the Nation's claim that this case is not ripe is the fact that the trust decision has been appealed to the Ninth Circuit, but the Nation would be the first to assert that the trust decision is correct and will be upheld on appeal. The Nation has made clear that it fully intends to move forward with gaming on Parcel 2, and Plaintiffs have made equally clear that they intend to oppose such gaming. Given the concrete and substantial nature of the dispute between the parties, the Court concludes that the claims in the amended complaint are sufficiently ripe for adjudication.

### C.      Primary Jurisdiction as to Count 1.

IGRA prohibits gaming on Indian lands acquired after 1988. An exception to this ban applies if lands are taken into trust as part of "a settlement of a land claim." 25 U.S.C. § 2719(b)(1)(B)(i). The Compact allows gaming on lands acquired after 1988 if they fall within this exception. Compact § 3(j)(1). Plaintiffs assert that Parcel 2 was not acquired in "settlement of a land claim" within the meaning of IGRA and that gaming on the parcel would therefore violate the Compact. Doc. 26 ¶ 88.

The Nation argues that the Court should not rule on this issue until after it is

1    addressed by federal agencies.  Doc. 33 at 13; Doc. 38 at 8.  The Nation requested an

2    opinion on this issue from DOI on April 8, 2011 (Doc. 33 at 13), and from NIGC on

3    May 27, 2011 (Doc. 38 at 8:16-18).  The Nation argues that NIGC will decide the issue

4    within 90 days of the request, in consultation with DOI, and that Count 1 should be

5    dismissed or stayed under the doctrine of primary jurisdiction.  Doc. 33 at 13:14.

6         Plaintiffs argue that "primary jurisdiction" typically operates where Congress

7    charged the agency with administering a complex regulatory scheme and agency opinions

8    carry the force of law (*see id.* at 13:7-17), or where the agency's decision process will

9    create a factual record that will later aid the court's determination (*id.* at 13:17-27).

10   Plaintiffs argue that neither circumstance exists here.  *Id.* at 13-14.

11        Primary jurisdiction requires a court to stay or dismiss proceedings "so as to give

12   the parties reasonable opportunity to seek an administrative ruling."  *Reiter v. Cooper*,

13   507 U.S. 258, 268-69 (1993).  Primary jurisdiction applies to "claims properly cognizable

14   in court that contain some issue within the special competence of an administrative

15   agency[.]"  *Id.* at 268-69.  "[T]he doctrine is not designed to secure expert advice from

16   agencies every time a court is presented with an issue conceivably within [an] agency's

17   ambit."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal

18   quotation marks and citation omitted).  "Instead, it is to be used only if a claim requires

19   resolution of an issue of first impression, or of a particularly complicated issue that

20   Congress has committed to a regulatory agency, and if protection of the integrity of a

21   regulatory scheme dictates preliminary resort to the agency which administers the

22   scheme."  *Id.* (internal quotation marks and citation omitted).

23        In determining whether primary jurisdiction applies, a court examines several

24   factors: "(1) a need to resolve an issue that (2) has been placed by Congress within the

25   jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute

26   that subjects an industry or activity to a comprehensive regulatory authority that

27   (4) requires expertise or uniformity in administration."  *Id.*  Each factor is satisfied in this

28   case:  (1) the "settlement of a land claim" forms part of Claim 1 and must be addressed,

(2) Congress vested NIGC and DOI with authority to make gaming determinations under IGRA, including resolution of "settlement of a land claim" issue, (3) IGRA is a complex regulatory scheme, and (4) NIGC and DOI possesses expertise in making these determinations.  *See, e.g., Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 321-22 (W.D.N.Y. 2007) (noting that "[i]n enacting the IGRA, Congress established the NIGC as an independent agency charged with exclusive regulatory authority for Indian gaming on Indian lands").

The Court concludes that the "settlement of a land claim" issue should be addressed in the first instance by the agencies charged with expertise in this area.  The Court therefore will stay the adjudication of the "settlement of a land claim" portion of Claim 1 for 100 days from May 27, 2011.  The parties shall summarize the NIGC's decision and their proposed next steps in a joint status report filed within ten days of the NIGC's decision or by September 5, 2011, whichever is earlier.[4]

### D.    Merits of Claim 1.

#### 1.    IGRA's "Settlement of a Land Claim" Exception.

Because the Court has decided to await NIGC and DOI's determination on this issue, the motion to dismiss will be denied on this portion of the claim.

#### 2.    Implied Term Regarding Gaming in Phoenix.

The Nation's motion argues that to the extent Claim 1 attempts to prohibit gaming in the Phoenix area based on an express or implied term in the Compact, the attempt fails because no such term has been identified by Plaintiffs.  Doc. 33 at 15 n.4.  Plaintiffs respond that that the parties' statements during Compact negotiations and while promoting Proposition 202 show that no new gaming establishments were to be opened in the Phoenix area, and that implying such a term would not contradict express terms of

---

[4] Plaintiffs argue that the Nation views NIGC's opinion as merely advisory (Doc. 37 at 13), but so long as the agency has "special competence and experience" in addressing the issue, the fact that a determination is advisory is not dispositive. *Foremost Int'l Tours, Inc. v. Qantas Airways Ltd.*, 525 F.2d 281, 286-287 (9th Cir. 1975). Moreover, the Nation conceded during oral argument that NIGC's decision will practically, if not legally, bind the Nation.

the Compact.  Doc. 37 at 7-8, 18-20.  The Nation replies that parol evidence cannot be used to introduce an intent that the Compact's plain language does not contain, and that the plain language expressly permits gaming on lands covered by IGRA's "settlement of a land claim" exception.  Doc. 38 at 12.  The Nation also argues that omission of a term barring gaming in the Phoenix area indicates that such a term was not part of the agreement because the State of Arizona was a sophisticated party, the Compact was approved by the Secretary of the Interior, and the Compact contained a broad integration clause.  *Id.* at 13:14-18.

The parol evidence rule will be critical to a correct decision on this claim, and yet the parties have not thoroughly addressed the complex choice-of-law issues presented by the parol evidence issue in this case.  The Compact states that it "shall be governed by and construed in accordance with the applicable laws of the United States, and the Nation and the State."  Doc. 26-1 at 77.  The Compact itself thus directs the Court to federal law, Arizona law, and the Nation's law.  The parties have not addressed this provision or how it should be applied by the Court, nor have they addressed differences between the parol evidence rules of Arizona law, federal common law, and the Nation's law.

The Arizona Supreme Court has adopted a more liberal interpretation of the parol evidence rule than many courts.  "[T]he judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties."  *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993).  Arizona does not adhere to the view "that ambiguity must exist before parol evidence is admissible."  *Id.*

The Nation argues that the Court should adopt the more traditional version of the parol evidence rule embodied in federal common law, but in making this argument the Nation does not address the choice-of-law provision of the Compact.  The Nation instead cites *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 618 F.3d 1066 (9th Cir. 2010), but *Cachil*'s statement that "[g]eneral principles of federal

contract law govern the Compacts" appears limited to compacts that do not have a choice of law provision to the contrary. *Cachil* cited *Kennewick Irrigation District v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989), and *Idaho v. Shoshone-Bannock Tribes,* 465 F.3d 1095, 1098 (9th Cir.2006), to support this position, 618 F.3d at 1073, but *Kennewick* is not a compact case at all and *Shoshone-Bannock* included a compact provision that chose "the laws of the United States" as the governing law, 465 F.3d at 1098.

The Nation stresses that the Compact in this case includes an integration clause. But whether such a clause should be interpreted in light of Arizona, federal, or the Nation's law is not thoroughly addressed by the parties.

Moreover, courts typically decide the effect of parol evidence rules with the parol evidence in hand. The parties have conducted no discovery to date, and the parol evidence that might support Plaintiffs' interpretation of the Compact has not been marshaled for the Court.

In sum, the Court cannot at this stage to determine what source of law governs the parol evidence issue, what parol evidence might be relevant, and what law should be used to construe the integration clause and other terms of the Compact. The Court therefore cannot grant the Nation's motion to dismiss the implied-term portion of Claim 1.

**E.     Merits of Claim 2.**

The Nation argues that this claim fails for two independent reasons: (1) the implied covenant of good faith and fair dealing does not apply to a compact agreed to by sovereigns and approved by the Executive branch; and (2) the covenant cannot imply terms that are inconsistent with the express terms of the Compact. Doc. 33 at 22-24.

In support of its first argument, the Nation relies chiefly on *Alabama v. North Carolina*, 130 S. Ct. 2295 (2010). Doc. 33 at 22-23. *Alabama* recognizes that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." 130 S. Ct. at 2312 (quoting Restatement § 205). The Court goes on to hold, however, that such a duty does not apply to interstate compacts. *Id.* The holding rests on the determination that "an interstate compact is not just a contract[:] it is a federal

—

statute enacted by Congress." *Id.* The Supreme Court refused to "add provisions to a federal statute" on the ground that federal courts lack the power to do so. *Id.*

In deciding that it will not "order relief inconsistent with [the] express terms of a compact, no matter what the equities of the circumstances might otherwise invite," the Supreme Court relied on *New Jersey v. New York*, 523 U.S. 767, 811 (1998). *Alabama*, 130 S. Ct. at 2313 (internal quotation marks and citations omitted). *New Jersey*, in turn, rested its holding on the Constitution's Compact Clause that governs compacts between States. 523 U.S. at 811 ("[C]ongressional consent transforms an interstate compact within [the Compact] Clause into a law of the United States . . . [and therefore unless] the compact to which Congress has consented is somehow unconstitutional, no court may order relief inconsistent with its express terms . . . ." (internal quotation marks and citations omitted; some alterations in original)). The *Alabama* court repeatedly qualified its holding as applying to "interstate compacts."

The Nation argues that *Alabama* should be extended to gaming compacts between States and Indian tribes because of *Alabama*'s homage to principles of federalism and separation of powers. *See* 130 S. Ct. at 2312-13. The Nation also suggests that the Ninth Circuit's decision in *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997), and the district court opinion in *Muhammad v. Comanche Nation Casino*, 742 F. Supp. 2d 1268, 1276 n.7 (W.D. Okla. 2010), suggest that the principle embodied by *Alabama* should be extended to the Compact here. The Court does not agree.

*Alabama*'s rationale is rooted in the special nature of interstate compacts and their status as federal statutes after Congressional approval. A gaming compact does not have such status.

The district court opinion in *Muhammad* makes no reference to *Alabama* despite being decided nearly four months later, and although it suggests in a footnote that "[a] tribal-state gaming compact is similar to a 'congressionally sanctioned interstate compact the interpretation of which presents a question of federal law,'" this footnote addressed whether "an action seeking the enforcement of a tribal gaming compact arises under

1   federal law." 742 F. Supp. 2d at 1276 & n.7. That is not the question presented by the

2   Nation's *Alabama* argument. As already noted, *Alabama* itself recognizes that the

3   implied duty of good faith and fair dealing generally arises as a matter of federal law.

4   *Muhammad* says nothing about whether that duty is inapplicable to gaming compacts.

5       *Cabazon Band* is, of the three cases cited, the closest parallel to the issue before

6   this Court. That case involved a complicated dispute between California and several

7   tribes. *See generally*, 124 F.3d 1050. One argument before the appellate panel was that

8   the tribes consented to their gaming activities being regulated by the state "simply by

9   entering into the [c]ompacts." *Id.* at 1059-60. In addressing that argument, the majority

10  concluded that Indian tribes were traditionally "immune from state criminal and

11  regulatory jurisdiction except to the extent that they consented to be governed by it," that

12  "tribal consent was a key component of IGRA" as a means of "preserv[ing] [that] long-

13  established principle," that "[t]he Bands have not consented to state regulation of gaming

14  activities other than that expressly covered in the Compacts," and that "[b]ecause the slot

15  machines and [other] games are not mentioned in the Compacts, the Bands have not

16  breached the Compacts." *Id.* The court quoted favorably from the district court order,

17  which stated in part that "[t]o infer a general covenant in the compacts by the tribes not to

18  engage in gaming in violation of state law and IGRA, would be tantamount to finding a

19  cession by the tribes of general regulatory authority to the State over class III Indian

20  gaming[.]" *Id.* at 1060. In sum, *Cabazon Band* "decline[d] to conclude that the Bands

21  have impliedly consented to the extension of state regulatory authority to their tribal

22  lands, beyond the express provisions of the Compacts, simply by entering into the

23  Compacts." *Id.* It said nothing about whether the covenant of good faith and fair dealing

24  may be implied in a compact.

25      In its second argument, the Nation argues that even if the implied covenant exists

26  in this case, it "cannot be extended to create obligations not contemplated by the

27  contract." Doc. 33 at 23 (quoting *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir.

28  2009)). But until the Court resolves the parol evidence issues discussed above with

respect to the terms of the Compact, it will not know whether Plaintiffs' argument concerning the covenant of good faith and fair dealing is being used to create obligations not included in the Compact.  Resolution of this argument must therefore await resolution of the parol evidence issues.  Claim 2 cannot be dismissed at this time.

### F.   Claims 3, 5, 6, and 7.

#### 1.   Sovereign Immunity.

The Nation argues that claims 3, 5, 6, and 7 are barred by the Nation's sovereign immunity for two reasons: (1) IGRA abrogates sovereign immunity only for gaming in violation of a compact, and these claims do not assert violations of the Compact; and (2) to the extent claims 5, 6, and 7 seek remedies other than enjoining gaming activity, they are beyond the abrogation of sovereign immunity contained in IGRA.  Doc. 33 at 25-26.  Plaintiffs respond that the claims go directly to the Nation's operation of gaming activities on Parcel 2 under the Compact, and that the alternative relief sought is the functional equivalent of an injunction and therefore cognizable under IGRA.  Doc. 37 at 23-25.  The Court will address sovereign immunity as to each claim separately.

##### a.   Claim 3 – Promissory Estopppel.

The third claim for relief, captioned "Promissory Estoppel," alleges that "Plaintiffs relied on the Nation's commitment that its compliance with the compacts would ensure that no new gaming facilities would be opened in the Phoenix metropolitan area," and that "the Nation should be estopped and enjoined from upsetting those substantial reliance interests by opening a new gaming facility on the Glendale Property."  Doc. 26 at 19-20.  The Nation argues that, under Restatement (Second) of Contracts § 90, such a promise may be enforced only as a separate contract, and that enforcement of a contract other than a formal gaming compact is not permitted because IGRA abrogates sovereign immunity only for compact violations.

Although Ninth Circuit case law is clear that § 2710(d)(7)(A)(ii) abrogates tribal sovereign immunity for claims alleging violations of a gaming compact, case law also suggests that under certain circumstances promises made during compact negotiations to

refrain from certain gaming can be enforced.  *Cf. Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1044-45 (9th Cir. 1996).  In *Racicot*, Montana sued the Crow Tribe to enjoin gaming with mechanical slot machines.  The tribe argued that the language of the compact permitted slot machines, but Montana "respond[ed] that throughout the compact negotiations the State repeatedly objected to the use of slot machines; that the Crow agreed to drop slot machines from their compact proposals; and that the term 'lottery games' relates only to those forms of gaming allowed under the Montana Lottery."  *Id.* at 1044.  The Ninth Circuit found that "[t]he State's argument premised on the negotiation of the compact is persuasive," and recounted prior compact drafts, statements, and objections made during negotiations.  *Id.* at 1045.  Given this holding, the Court concludes that the promissory estoppel claim cannot be resolved on a motion to dismiss.  The claim must be considered in the context of the conduct and statements of the parties during negotiations of the Compact, a task better suited for summary judgment or trial.

### b.        Claim 5 – Fraud in the Inducement.

Claim 5 alleges that when the Nation was negotiating the Compact it "had a secret plan . . . to build a gaming facility in the Phoenix metropolitan area . . . notwithstanding its contrary representations to the Plaintiffs and the public."  Doc. 26 at 21.  The claim asserts that "the State would not have signed the Compact had it known of the Nation's plans," and seeks to "have the Compact reformed to prevent the Nation from opening any new casinos in the Phoenix metropolitan area."  *Id.*  The Nation argues this claim attacks the validity of the Compact, and that reformation is not a remedy for which Congress abrogated the Nation's sovereign immunity.  Doc. 33 at 26.  Plaintiffs respond that the conduct alleged by this claim "goes directly to 'the operation of gaming activities' under the Compact," and that having the Compact reformed is the functional equivalent of enjoining class III gaming under IGRA.  Doc. 37 at 24.

The possibility that reformation may be functionally equivalent to an injunction, or that reformation would essentially imply a Compact term along the lines discussed above with regard to Claim 1, is not the relevant inquiry for sovereign immunity purposes.  The

threshold inquiry is whether the wrong complained of in Claim 5 is one for which sovereign immunity has been abrogated. *Cf. Seminole Tribe of Florida v. Fla.*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the *relief* sought by a plaintiff suing a State is *irrelevant* to the question whether the suit is barred by the Eleventh Amendment." (emphasis added)); *see also Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 691 & n.19 (9th Cir. 2004) (noting that the tribal sovereign immunity standard parallels the standard enjoyed by States under the Eleventh Amendment).

Congress abrogated tribal sovereign immunity only for claims alleging violations of gaming compacts.  25 U.S.C. § 2710(d)(7)(A)(ii).  Fraudulently inducing a state to enter such a compact is not a wrong countenanced by this abrogation.  Moreover, had such a compact not existed, as Claim 5 alleges would have been the case absent the fraud, it is doubtful Plaintiffs would have been entitled to injunctive relief from this Court under IGRA.  *See Seminole Tribe*, 181 F.3d at 1246 n.13 ("Because there is no compact between the State and the Tribe, the cause of action expressly created by 25 U.S.C. § 2710(d)(7)(A)(ii) is plainly not available to the State.").

Because fraudulent inducement does not constitute a claim for breach of the Compact, and IGRA abrogates tribal sovereign immunity only for breach-of-compact claims, the Court finds Plaintiffs' fraudulent inducement claim barred by sovereign immunity.

### c.      Claim 6 – Material Misrepresentation.

The amended complaint alleges that the Nation affirmatively misrepresented and failed to disclose material facts, inducing the State to enter the Compact.  Doc. 26 at 22. It also asserts that the State is entitled to a declaration that the Compact is voidable.  *Id.* The Nation makes arguments similar to those for Claim 5 (Doc. 33 at 26), and Plaintiffs' response parallels their response to Claim 5 (Doc. 37 at 23-24).  For the same reasons as discussed above with respect to Claim 5, the Court finds that Claim 6 is barred by sovereign immunity.  Material misrepresentation is a wrong other than breach of the Compact, and IGRA abrogates sovereign immunity only for beach of the Compact.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### d.     Claim 7 – Anticipatory Repudiation.

The amended complaint alleges in Claim 7 that the Nation has breached the Compact through anticipatory repudiation and seeks a judicial declaration that the Compact is voidable.  Doc. 26 ¶¶ 126, 127.  The wrong alleged – breach of the Compact – clearly is covered by IGRA's abrogation of sovereign immunity.  The Nation argues, however, that the relief sought in this claim – that the Compact is voidable – is not permissible because IGRA allows only injunctive relief.  The Court need not decide this issue because the "Remedies" section of the amended complaint includes a request for injunctive relief that applies to all claims, including Claim 7.  *Id.* at 23.

### 2.     Failure to State a Claim.

#### a.     Claim 3 – Promissory Estoppel.

The Nation argues that this claim fails because the Compact's merger clause would have made reliance by the State on any public statements made by the Nation with respect to gaming in Phoenix unreasonable.  Doc. 33 at 26-27.  Plaintiffs appear to respond that Claim 3 turns on the reasonableness of reliance, and reasonableness is a factual issue.  Doc. 37 at 25-26.

The Court will not dismiss Claim 3,  Reasonableness generally is a factual issue, and the Court cannot determine the precise meaning of the Compact, including the integration clause, without resolving the parol evidence issues discussed above.

#### b.     Claims 5 and 6.

Because the Court concluded above that these claims are barred by sovereign immunity, it need not decide whether they state a claim.

#### c.     Claim 7 – Anticipatory Repudiation.

The Nation's motion states in the caption of Section V that Claim 7 is among the causes of action that fail to state a claim, but the motion contains no argument on that issue.  Doc. 33 at 26-30.  The Court will therefore deny the motion with respect to Claim 7.

1

### G.    Dismissal of Tribal Plaintiffs.

2          The Nation argues that the tribal plaintiffs should be dismissed because they were

3   not parties to or beneficiaries of the Compact and therefore have no claims for breach-of-

4   Compact against the Nation, the only claims for which the Nation's sovereign immunity

5   has been abrogated.   Doc. 33 at 30-31.   The Nation notes that § 19 of the Compact

6   provides that the Compact does not create a private right of action for third parties in any

7   claim of any type.   *Id.*   Plaintiffs respond that the tribal plaintiffs are beneficiaries of the

8   Compact in light of the nature of the joint negotiations and expectations of all the tribes

9   involved in the process, and that § 2710(d)(7)(A)(ii) permits any tribe to sue over any

10  violation of any gaming compact.   Doc. 37 at 29-30.

11         Although some statutes are jurisdictional and not remedial, *see, e.g.*, *United States*

12  *v. Navajo Nation*, 537 U.S. 488, 503 (2003), the issue of whether § 2710(d)(7)(A)(ii)

13  creates a remedy for other tribes is a close question.   The Nation has not cited binding

14  case law that holds § 2710(d)(7)(A)(ii) to be purely jurisdictional.   Moreover, some cases

15  suggest that tribes have an independent right of action under IGRA to enjoin gaming in

16  violation of a compact.   *See Seminole Tribe*, 181 F.3d at 1246 n. 13, 1248.   Because the

17  parties have not adequately briefed this issue, the Court will not dismiss the Plaintiff

18  tribes on the ground that IGRA provides them no remedy.

19         The Nation's main argument is that the tribal plaintiffs have no right to enforce the

20  Compact as a third-party beneficiary in light of § 19 of the Compact.   That section

21  provides:  "This Compact is entered into solely for the benefit of the Nation and the State.

22  It is not intended to create any rights in third-parties which could result in any claim of

23  any type against the Nation and/or the State.   Neither the Nation nor the State waive their

24  immunity from third-party claims and this Compact is not intended to result in any

25  waiver of that immunity, in whole or in part."   Doc. 26-1 at 74.   Section 19 is not,

26  however, the only provision of the Compact that addresses other tribes.   Section 2(vv)

27  provides that the Compact will go into effect only once "[e]ach Indian tribe with a

28  Gaming Facility in Maricopa, Pima or Pinal Counties has entered into a new Compact[.]"

*Id.* at 17-18.  This provision includes Plaintiffs Gila River and Salt River because both have gaming facilities in Maricopa County, and would suggest that their approval of the uniform compact was necessary for the Nation's Compact to become effective, and that they therefore had some stake in the Compact.  Section 3(c) of the Compact also lays out an allocation of gaming devices among different tribes, suggesting that the various tribes relied on the allocation of gaming devices and locations contained in each version of the Compact, including the Nation's Compact.  *Id.* at 24-25.

The Court cannot conclude that the tribal Plaintiffs' claims are barred by § 19 without first determining the effect of parol evidence as discussed above.  Only then will the Court be able to make a fully informed decision on whether the tribal Plaintiffs are third-party beneficiaries of the Compact notwithstanding the language of § 19.

**IV.    Conclusion.**

As a result of the rulings above, the Court is dismissing Claims 5 and 6.  Claims 1, 2, 3, and 7 survive as discussed above.  Given the nature of Defendant's challenge to Claim 4 (Doc. 33 at 25 n.13), this claim also survives to the extent the wrong it alleges and the relief it requests is not foreclosed by this order.  The Court has stayed adjudication of the "settlement of a land claim" portion of Claim 1 for 100 days from May 27, 2011.  The remaining portion of Claim 1, along with Claims 2, 3, 4, and 7, shall continue pursuant to a schedule to be proposed by the parties and approved by the Court.

**IT IS ORDERED:**

1.    The Nation's first motion to dismiss (Doc. 24) is **denied as moot**.

2.    The Nation's second motion to dismiss (Doc. 33) is **granted in part and denied in part** as stated above.

3.    The parties shall file a joint status report as required by this order within ten days of the NIGC's decision or by **September 5, 2011**, whichever is earlier.

4.    By **June 30, 2011**, the parties shall file a joint proposed discovery and motion schedule for the remainder of this case.  After reviewing the proposed schedule, the Court will either enter a further case management order or schedule a telephone

1   hearing with the parties to discuss such an order.

2       Dated this 15th day of June, 2011.

3

4

5

6   David G. Campbell
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28