| | |
|---|---|
| Mary R. O'Grady (#011434) | Linus Everling, General Counsel |
| John L. Blanchard (#018995) | (#019760) |
| Shane M. Ham (#027753) | GILA RIVER INDIAN COMMUNITY |
| Grace E. Rebling (#028661) | 525 W. Gu u Ki |
| OSBORN MALEDON, P.A. | P.O. Box 97 |
| 2929 North Central Avenue | Sacaton, Arizona  85247 |
| Suite 2100 | (520) 562-9763 |
| Phoenix, Arizona  85012 | Linus.Everling@gric.nsn.us |
| (602) 640-9352 | |
| mogrady@omlaw.com | James P. Tuite (Pro Hac Vice) |
| jblanchard@omlaw.com | Merrill C. Godfrey (Pro Hac Vice) |
| sham@omlaw.com | Jason T. Hauter (#022188) |
| grebling@omlaw.com | AKIN GUMP STRAUSS HAUER & FELD LLP |

*Attorneys for Plaintiff Salt River Pima-Maricopa Indian Community*

1333 New Hampshire Avenue, N.W.
Washington, DC  20036-1564
(202) 887-4000
jtuite@akingump.com
mgodfrey@akingump.com
jhauter@akingump.com

Thomas C. Horne (#002951)
Attorney General
Michael Tryon (#003109)
Evan Hiller (#028214)
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona  85007-2926
(602) 542-5025
Tom.horne@azag.gov
Michael.tryon@azag.gov
Evan.hiller@azag.gov

Brian J. Schulman (#015286)
GREENBERG TRAURIG LLP
2375 E. Camelback Road, Suite 700
Phoenix, AZ  85016
602-445-8000
schulmanb@gtlaw.com

*Attorneys for Plaintiff Gila River Indian Community*

*Attorneys for Plaintiff the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **The State of Arizona**; **The Gila River Indian Community**, a federally recognized Indian tribe; and **The Salt River Pima-Maricopa Indian Community**, a federally recognized Indian tribe,<br><br>Plaintiffs,<br><br>v.<br><br>**The Tohono O'odham Nation**, a federally recognized Indian tribe,<br><br>Defendant. | Case No. 2:11-cv-00296-DGC<br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF**<br><br>(Assigned to Hon. David G. Campbell) |

## I. ARIZONA LAW AND THE RESTATEMENT FORECLOSE GRAFTING A REASONABLENESS REQUIREMENT ONTO § 201.

The Nation's arguments in favor of adding an objective reasonableness requirement to § 201 contradict the Restatement and Arizona law. The Nation begins by arguing that § 201 is "a rule of contract *interpretation*," Doc. 219 at 7, and cannot be applied in the absence of ambiguity. But interpretation is not synonymous with the presence of ambiguity. In *Johnson v. Cavan*, the phrase "Suites 117 through 120" was "facially unambiguous," yet the Court explained that "[e]ven though words seem on their face to have only a single possible meaning . . . [i]n cases of misunderstanding, there *must* be inquiry into the meaning attached to the words by each party and into what each knew or had reason to know." 152 Ariz. 452, 455, 733 P.2d 649, 652 (App. 1986) (quoting Rest. § 214 cmt. b) (emphasis added). The Nation's proposed rule contravenes *Johnson*. Moreover, the drafters of the Restatement knew how to limit interpretation with a reasonableness requirement. *See, e.g.*, Rest. § 206. Neither § 201 nor cross-referenced § 20 contains such a limitation; indeed, when it applies, § 201 makes objective reasonableness irrelevant. *See, e.g.*, Rest. § 20 cmt. d illus. 5 ("horse" means "cow" if one party knew the other party so intended).

The Nation also ignores the Restatement's ranking of the meaning attached by the parties over meanings provided by law or objective third parties. Under the Restatement, § 201 sits atop the hierarchy of interpretation rules. The Restatement begins by defining interpretation of a contract as "the ascertainment of its meaning" (§ 200), and then looks first to meanings actually "attached" by one or both parties (§ 201). Only if the § 201 inquiry is inconclusive does § 203(a) give "preference" to meanings that make an agreement "reasonable" over meanings that render part of it "unreasonable." *Id.* § 203. "The rules of [§ 203] . . . apply only in choosing among reasonable interpretations. They do not override evidence of the meaning of the parties" under § 201. *Id.* § 203 cmt. a. In turn, it is only *after* such preferences as § 203(a) fail to resolve the dispute that *contra preferendum* (in § 206) applies—only when the court

2

must "choos[e] among the reasonable meanings of a promise or agreement or a term thereof." Rest. § 206.  The Nation's attempt to equate § 201(2) with the subordinate rule of *contra preferendum* fails.

The Nation attempts to transform § 201's subjective inquiry by paraphrasing Farnsworth's explanation about a party "knowing of a misunderstanding . . . being subjected to the other party's understanding," narrowing it to apply only to a party who "knows *that a contractual term is ambiguous* and that the two parties interpret it differently." Doc. 219 at 8 (emphasis added).  The Nation simply invented this restriction, and fails to cite a single case making reasonableness part of the § 201(2) inquiry.  Indeed, the Nation's misstatement of the holding of *Bock v. Computer Associates International* is telling.  Doc. 219 at 9-10.  Far from requiring ambiguity *before* applying § 201(2), the court there concluded that a party could be "rescued from the plain and ordinary meaning" of a written agreement *as the result of* a proffer of § 201(2) evidence.  *Bock*, 257 F.3d 700, 711 (7th Cir. 2001).  The Nation also cites cases from jurisdictions with a "plain meaning rule" that exclude *all* extrinsic evidence in the absence of facial ambiguity.[1]  But these cases, from jurisdictions where the Restatement does not apply with full force, say nothing about Arizona, where the Restatement is law.  Doc. 220 at 2.

The Nation argues the Court is precluded from considering § 201(2) because its conclusion that the contract is not "reasonably susceptible" to Plaintiffs' reading excludes the extrinsic evidence that would inform a § 201(2) analysis.  That misreads the Court's reservation of the § 201(2) question, holding that the proffered evidence

---

[1] Doc. 219 at 9-10, citing *Woods Masonry, Inc. v. Monumental Gen. Cas. Ins. Co.*, 198 F. Supp. 2d 1016, 1026 (N.D. Iowa 2002) (Arkansas law); *Harris Corp. v. Giesting & Assocs.*, 297 F.3d 1270, 1272-1273, 1275-1276 (11th Cir. 2002) (Florida law; the court excluded all extrinsic evidence so discussion of § 201(2) is dicta); *United States ex rel. Union Bldg. Materials v. Haas & Haynie Corp.*, 577 F.2d 568, 571 n.1 (9th Cir. 1978) (Hawaii law); *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831-832 (10th Cir. 2005) (Utah law); *Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515, 1519 (11th Cir. 1986) (federal common law); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) (same).

3

under § 201(2) is "sharply conflicting" and presents "a genuine dispute of fact" that requires a trial unless § 201(2) is limited as a matter of law by a reasonableness requirement. Doc. 216 at 25. Except for its ruling on § 201(1), the Court's analysis so far has been limited to an objective inquiry: whether any "*reasonable* reading of the Compact could lead *a person* to conclude that it prohibited new casinos in the Phoenix area." *Id.* (emphasis added). The Court expressly did *not* use subjective knowledge and intent to interpret the Compact under § 201(2).

Interpretation remains unfinished until the § 201(2) analysis is complete. The Nation cites no authority suggesting that the Court may interpret the Compact without applying § 201(2), conclude that the contract is not "reasonably susceptible" to the meaning proffered under § 201(2), and then exclude the proof of that § 201(2) meaning. A court can decide that "the asserted meaning of the contract language is so unreasonable or extraordinary *that it is improbable that the parties actually subscribed to* the interpretation asserted by the proponent of the extrinsic evidence," but it cannot exclude "credible" evidence regarding meanings actually attached by or known to the parties. *Taylor v. State Farm Mut. Auto. Ins.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). Here, the Court has already noted such a dispute. Doc. 216 at 24-25. Section 20's horse-cow illustration shows why courts must resolve such credible factual disputes—an unambiguous expression of the deal is not always the entire story. If the Nation were correct, the horse-cow illustration would have the opposite result, binding Party A to the word it used rather than the word it meant. Thus, the "reasonably susceptible" inquiry under *Taylor* is not limited to or synonymous with objective reasonableness because "it is *fundamental* that a court attempt to ascertain and give effect to the intention of the parties at the time the contract was made if at all possible." *Taylor*, 175 Ariz. at 153, 854 P.2d at 1139 (emphasis added).

The Nation argues that to allow unreasonable meanings to be enforced under § 201 would depart from interpretation entirely and create "a freestanding claim for relief completely divorced from the parties' actual, unambiguous agreement." Doc. 219

at 11.  This ignores that § 201(2) requires proof of meanings genuinely *attached* by one of the parties to the agreement itself when made—the very opposite of a freestanding grievance.  The Nation's disparagement of inquiring into the subjective intentions of the parties misunderstands the Restatement's approach to interpretation—discerning such meanings is a fundamental and inescapable task.[2]  *See* Rest. §§ 200, 201.

The Nation's final argument, that the State had reason to know about the Nation's secret interpretation, incorrectly ignores that §§ 201(2)(a) and (2)(b) are disjunctive.  When one party "truly held" one meaning of the contract and the other party "knew of" that meaning, Doc. 219 at 11-12, § 201(2)(a) applies by its terms, and there is no need to conduct an inferior analysis of imputed knowledge or belief under a "reason to know" analysis in § 201(2)(b).  In any event, the Nation is wrong to equate "meanings in general usage" and objectively "reasonable" interpretations with "reason to know" under § 201(2)(b).  *See* Doc. 220 at 7 n.4.

**II.    THE MEANING ATTACHED BY THE GOVERNOR AND HER AGENTS AT THE TIME OF EXECUTION CONTROLS THE § 201(2) ANALYSIS**

The parties agree that the meaning the State attached to the Compact for purposes of § 201(2) is determined by looking to the understanding of the State's negotiators.  Doc. 219 at 13.  But the Nation argues that the Governor's understanding of the Compact is irrelevant to the § 201(2) analysis and that the Court may only consider evidence "at the time the disputed term was agreed upon."  Doc. 219 at 12.  The Nation's distinctions are arbitrary and its arguments are unsupportable.[3]

---

[2] The Nation simply assumes that *Long v. Glendale*, 208 Ariz. 319, 93 P.3d 519 (App. 2004), would have been decided the same way if proof supporting a § 201 meaning had been proffered, but *Long* does not address that question, and the Court's reliance on *Long* has not answered it.  Nor would § 201(2) unfairly diminish the Nation's claimed sovereign immunity for misrepresentation.  By its terms, § 201 applies regardless of whether the party who knew of a difference in meaning was intentionally lying in wait, as the Nation was here.  *See* § 20 and Doc. 220 at 3-4.

[3] Without defining the term "negotiator" or identifying any individuals, the Nation inexplicably and arbitrarily divides the purportedly irrelevant Governor and her "top advisors" from the relevant "executive staffers," Doc. 219 at 13, and ignores the undisputed drafting role of her lawyers, Doc. 203 ¶ 66.

5

The Nation cites no authority for the proposition that when negotiators act as agents on behalf of a disclosed principal—here the Governor—the agents' intentions govern contract interpretation rather than those of the principal. Doc. 219 at 13. Although the Governor may not have been involved in "the fine points of negotiations," Doc. 219 at 13, the negotiator-agents' knowledge is imputed to the Governor. Rest. 3d of Agency §§ 5.03, 8.11; *see also* Doc. 220 at 9 (explaining agency relationship). Indeed, no evidence even hints that the Governor and her negotiators attached different meanings to the Compact. *See, e.g.*, Doc. 204 ¶¶ 142, 146, 148, 155, 157-58, 193 (undisputed that the State negotiators, like the Governor, repeatedly stated that the Compact would permit no new casinos in the Phoenix area). By advancing a false distinction between the Governor and her agents, the Nation apparently hopes to exclude the undisputed evidence of the Governor's understanding of the Compact. *See, e.g.*, Doc 204 ¶¶ 142, 157, 158, 193.

The Nation argues that the Court should not consider evidence dated after February (or May) 2002, the date it now claims "the disputed term was agreed upon." Doc. 219 at 12. But the authority cited by the Nation makes clear that the legally relevant time to determine the parties' intent is at execution of the "contract." *Taylor*, 175 Ariz. at 153, 854 P.2d at 1139. Section 201(2) specifically refers to "the time the agreement was made," not the time an individual provision was negotiated. *See also* Rest. § 17(1) (requiring "a manifestation of mutual assent"). The Nation's position now conflicts with its refrain, repeated "on many occasions," that its negotiators could not commit the Nation "to anything." Doc. 206 ¶ 28. The Nation argues at length that its negotiating team had "no authority to bind the Nation in any way" and that intermediate agreements, including the Compact Framework, were tentative and nonbinding until a November 7, 2002 vote of the Legislative Council. Doc. 206 (Quigley Decl.) ¶¶ 28, 31, 88-90, 96, 106; Doc. 204 ¶¶ 46, 137. The date governing the analysis is the date of execution by both parties: December 4, 2002. Doc. 195-11.

RESPECTFULLY SUBMITTED this 29th day of May 2013.

| OSBORN MALEDON, P.A. | GILA RIVER INDIAN COMMUNITY |
|---|---|
| By s/ Shane M. Ham<br>  Mary R. O'Grady<br>  John L. Blanchard<br>  Shane M. Ham<br>  Grace E. Rebling<br>  2929 N Central Avenue, Suite 2100<br>  Phoenix, Arizona  85012<br><br>*Attorneys for Plaintiff Salt River Pima-Maricopa Indian Community* | By s/ James P. Tuite (with permission)<br>  Linus Everling, General Counsel<br>  525 W. Gu u Ki<br>  P.O. Box 97<br>  Sacaton, Arizona  85247<br><br>  James P. Tuite (*Pro Hac Vice*)<br>  Merrill C. Godfrey (*Pro Hac Vice*)<br>  Jason T. Hauter (#022188)<br>  AKIN GUMP STRAUSS HAUER &<br>    FELD LLP<br>  1333 New Hampshire Avenue, N.W.<br>  Washington, DC  20036-1564 |
| OFFICE OF THE ATTORNEY GENERAL, STATE OF ARIZONA | |
| By s/ Michael Tryon (with permission)<br>  Thomas C. Horne, Attorney General<br>  Michael Tryon<br>  Evan Hiller<br>  Assistant Attorneys General<br>  1275 W Washington Street<br>  Phoenix, Arizona  85007-2926<br><br>*Attorneys for Plaintiff the State of Arizona* | Brian J. Schulman<br>GREENBERG TAURIG LLP<br>2375 E Camelback Road, Suite 700<br>Phoenix, Arizona  85016<br><br>*Attorneys for Plaintiff Gila River Indian Community* |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

s/ Julie Greenwood