Jonathan Jantzen, Attorney General, SBN 016220
Samuel Daughety, Assistant Attorney General, SBN 023170
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
(520) 383-3410
jonathan.jantzen@tonation-nsn.gov
samuel.daughety@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Annie L. Owens (*Pro hac vice*)
Shivaprasad Nagaraj (*Pro hac vice*)
Sonya L. Lebsack (*Pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
annie.owens@wilmerhale.com
shiva.nagaraj@wilmerhale.com
sonya.lebsack@wilmerhale.com

*Counsel for Defendant Tohono O'odham Nation*

COUNSEL CONTINUED ON FOLLOWING PAGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THE STATE OF ARIZONA, THE GILA RIVER INDIAN COMMUNITY, and THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY,<br><br>Plaintiffs,<br><br>v.<br><br>THE TOHONO O'ODHAM NATION,<br><br>Defendant. | Case No. 2:11-cv-296-DGC<br><br>**THE TOHONO O'ODHAM NATION'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Michael J. Rusing, SBN 006617
Todd M. Hardy, SBN 023675
RUSING LOPEZ & LIZARDI, PLLC
6363 N. Swan Road, Suite 151
Tucson, AZ  85718
(520) 792-4800
mrusing@rllaz.com
thardy@rllaz.com

*Counsel for Defendant Tohono O'odham Nation*

1    This Court has already held that "[e]ven considering Plaintiff[s'] parol evidence, the
Court cannot conclude that [the Compact is] reasonably susceptible to Plaintiff[s']
interpretation." 5/7/13 Order 19. That holding precludes Plaintiffs from relying on
*Restatement (Second) of Contracts* §201 to resurrect their failed breach-of-contract claims.

   1.   Plaintiffs have not cited a single case in which a court has used Section 201 to
enforce a party's *unreasonable* interpretation of a contract. That is not surprising, because
a court need not determine "[w]hose [m]eaning [p]revails"—the question Section 201 helps
answer—unless a contract is reasonably susceptible to more than one meaning in the first
place. *See* Nation's Supp. Br. 2-7. The question is thus not, as Plaintiffs suggest (at 7),
whether the Court must "add" a reasonableness requirement to Section 201. Rather, Section
201 does not even come into play unless a court is faced with choosing between two
interpretations that, in light of all the circumstances, are reasonable interpretations.
Reasonableness is thus a *prerequisite* to the application of Section 201.

   Plaintiffs rely (at 2-3) on *Bock v. Computer Assocs.*, 257 F.3d 700 (7th Cir. 2001), for
the proposition that Section 201(2) applies even "when one party has an 'unreasonable'
interpretation of a contract term." In fact, *Bock* stands for the opposite proposition. As the
Seventh Circuit explained, a contract term can be ambiguous in one of two ways: Either it is
"intrinsic[ally]" ambiguous because, "considered within the four corners of the agreement,"
it is reasonably susceptible to more than one interpretation; or it is "extrinsic[ally]"
ambiguous because extrinsic evidence "'demonstrate[s] that although the contract looks
clear, anyone who understood the context of its creation would understand that it doesn't
mean what it seems to mean.'" *Id.* at 706, 707; *accord Taylor v. State Farm*, 854 P.2d 1134,
1139-1140 (Ariz. 1993); *Long v. City of Glendale*, 93 P.3d 519, 528 (Ariz. Ct. App. 2004).
*Bock* did not, as Plaintiffs claim (at 2), "reject[]" one party's interpretation "as
unreasonable." Rather, it held that although the contract was not *intrinsically* ambiguous, it
was *extrinsically* "ambiguous"—and therefore reasonably susceptible to more than one
meaning—because objective "extrinsic evidence indicat[ed] an intent contrary to the plain
meaning of the agreement's terms." *Bock*, 257 F.3d at 708. "[T]o resolve that ambiguity,"

the court remanded to determine, consistent with Section 201, "whether both parties shared the same meaning for the term ..., or whether Bock knew, or had reason to know, [the other party's] intended meaning." *Id.* at 709. *Bock* did not treat Section 201 as a freestanding mechanism to admit extrinsic evidence of one party's unreasonable interpretation after the court had determined that the agreement was unambiguous.[1]

Plaintiffs are simply wrong (at 3) that "[a]pplication of §201(2) is mandatory and unconditional" even where there is no ambiguity. Indeed, that assertion contravenes basic principles of Arizona contract law, which provide that "if the court finds that the written language is not 'reasonably susceptible' to the interpretation asserted by the proponent of the extrinsic evidence[,] then the court must preclude admission of *any* extrinsic evidence or argument that would actually vary or contradict the meaning of the written words." *Long*, 93 P.3d at 528 (emphasis added). Here, this Court has already examined Plaintiffs' extrinsic evidence and determined that the Compact is not "reasonably susceptible to Plaintiffs' interpretation." 5/7/13 Order 19. There is accordingly no ambiguity—intrinsic or extrinsic—to be resolved, and Section 201 does not apply.[2]

2. Plaintiffs claim (at 3) that *Restatement* Section 20 "amplifies [their] point," but that provision does not help them. While Section 201 addresses the interpretation of a contract, Section 20 addresses the different problem of contract *formation*—specifically, the "[e]ffect [o]f [m]isunderstanding" in determining whether the parties have mutually assented to an agreement. *See Restatement* §20 Rep.'s note to cmts. b & c ("It is important to

---

[1] Similarly, in *Local Union 1395 v. NLRB*, 797 F.2d 1027, 1036 & n.9 (D.C. Cir. 1986), the court held only that the NLRB erred by concluding that the agreement at issue was unambiguous without first considering whether extrinsic evidence of the parties' differing intents rendered the language ambiguous and thus subject to Section 201.

[2] Plaintiffs wrongly argue (at 5-6) that, because Section 201 inquires into the meaning the parties attach to their agreement, rather than a meaning imposed by law, "objectively unreasonable" interpretations of unambiguous contracts are enforceable under Section 201. In fact, Section 201 and similar principles merely "tip the scale in favor of one meaning or the other" where "ambiguity or vagueness" (patent or latent) has caused the parties to "attach[] different meanings to the contract language." *Farnsworth on Contracts* §7.9 (3d ed. 2004); *see generally id.* §7.7-7.9; Nation Supp. Br. 3-5; Nation Opp. to Recon. 2-5 (discussing Section 201(1) and *Johnson v. Cavan*, 733 P.2d 649 (Ariz. Ct. App. 1986)).

distinguish between the common problem of interpretation of key terms of a contract and the much less common question whether a material difference of understanding has prevented the manifestation of mutual assent necessary to create a contract at all.").[3]  And although "[t]here is a problem of interpretation in determining whether a contract has been made as well as … what obligations a contract imposes," *id.* cmt. c., Section 20, like Section 201, chooses among only *reasonable* interpretations in determining whether a contract was formed.  Under Section 20(1), if each party attached a different reasonable meaning to their exchange but neither had reason to know of the other's meaning—or if each had reason to know of the other's meaning—no contract is created; under Section 20(2), a court enforces Party *A*'s reasonable interpretation of the parties' exchange if Party *B* had reason to know of it and Party *A* had no reason to know of Party *B*'s interpretation.  Section 20 is not a means of imposing one party's *unreasonable* understanding of an agreement on the other party.

Decisions applying Section 20 make that point very clear.  As the Arizona Supreme Court has explained, "[r]elief is proper [under §20(1)] if the writing evidencing the purported agreement is uncertain or ambiguous." *Hill-Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 815 (Ariz. 1990).  If the writing is ambiguous on its face, or if extrinsic evidence "create[s] 'a latent ambiguity in otherwise clear and intelligible language,'" and each party attaches a different meaning to that language, then, "*[a]s long as the misunderstandings of the parties are reasonable under the specific circumstances of the case*, a court may properly find a lack of mutual assent." *Id.* at 815, 816 (emphasis added) (finding that buyer and seller had different reasonable understandings of real estate transaction and there was no enforceable contract); *see also Buckmaster v. Dent*, 707 P.2d 319, 321 (Ariz. Ct. App. 1985) (applying Section 20(1) only after finding latent ambiguity in contract in light of extrinsic evidence).  Arizona law on this point is consistent with the *Restatement*, which makes clear that Section 20(1) applies "only when the [parties'] misunderstanding goes to conflicting and

---

[3] Plaintiffs have not previously argued that they are entitled to relief under Section 20, nor do they clearly make any such argument now.  To the extent they are making that argument, it is waived as well as meritless.

1 irreconcilable meanings of a material term *that could have either* but not both meanings,"
2 *Restatement* §20 Rep.'s Note to cmt. d (emphasis added)—that is, when the parties'
3 conflicting interpretations are *reasonable*.

4 Other courts agree that at least a latent ambiguity is a prerequisite to application of
5 Section 20.  *See, e.g.*, *Local Motion v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997) ("The
6 presence of an ambiguous material term may indicate that no meeting of the minds occurred
7 when the document was signed."); *Perez v. Maine*, 760 F.2d 11, 13-14 (1st Cir. 1985)
8 (Breyer, J.) (finding contract language "ambiguous" before applying Section 20(2)(b) to
9 enforce defendant's meaning where "[defendant] had no reason to know about [plaintiff's]
10 interpretation, and … [plaintiff] knew in fact what [defendant] was likely thinking");
11 *Cappalli v. BJ's Wholesale Club*, 2012 WL 5472163, at *4 (D.R.I. Nov. 9, 2012) ("An
12 ambiguous contract should … be interpreted in accordance with one party's understanding
13 [under §20(2)] where 'that party does not know of any different meaning attached by the
14 other, and the other party knows the meaning attached by the first party.").

15 Where a contract is *unambiguous*, however, any misunderstanding is unreasonable
16 and thus not grounds for relief.  *See, e.g.*, *Coker v. Dep't of Commerce*, 324 F. App'x 912,
17 916 (Fed. Cir. 2009) (refusing to apply Section 20 in light of contract's unambiguous
18 language "because [plaintiff's] interpretation of the settlement agreement is not a reasonable
19 one" (citing Sections 20, 201)); *id.* (a "standard of reasonableness applies when parties attach
20 different meanings to contract language" (citing *Farnsworth* §7.9)); *cf. Woods Masonry v.*
21 *Monumental Gen. Cas. Ins.*, 198 F. Supp. 2d 1016, 1030 n.9 (N.D. Iowa 2002) (same
22 conclusion as to Section 201); *Harris Corp. v. Giesting & Assocs.*, 297 F.3d 1270, 1273-74
23 (11th Cir. 2002) (same).

24 Plaintiffs' reliance on Illustration 5 to Section 20 likewise misses the mark.
25 Illustration 5 explains that where Party *A* offers to sell his horse; Party *B*, knowing Party *A*
26 actually meant to offer his cow, accepts; and the price is a fair one for either the horse or the
27 cow, courts will enforce a contract for the sale of the cow.  Plaintiffs misconstrue this
28 common-sense proposition to mean that courts will enforce Party *A*'s unreasonable

4

interpretation of "horse" to mean "cow."  But this illustration does not involve contract interpretation at all:  Party *A* did not enter into the agreement because he wrongly interpreted "horse" to mean "cow."  Rather, extrinsic evidence shows that the parties intended to contract for the cow, and Party *A* made a slip of the tongue or scrivener's error.  In such a case, courts will enforce the bargain the parties actually struck rather than voiding the contract altogether.  But the evidence in this case forecloses a finding that any similar error occurred here.  Plaintiffs cannot seriously contend that the parties agreed to include a term prohibiting new casinos in Phoenix but instead inadvertently (a) included a gaming device allocation chart that makes no mention of such a prohibition; (b) preserved tribes' ability to conduct gaming anywhere on their Indian lands, including lands acquired under IGRA, 25 U.S.C. §2719; and (c) included an integration clause repudiating any "other statement, agreement, or promise" outside the writing.  Accordingly, the only question here is the meaning of the written Compact to which the State agreed—a dispute this Court has already resolved in the Nation's favor.

Finally, even if Section 20(2) were otherwise relevant here, Plaintiffs' argument would fail because under Section 20(2), like Section 201(2), Plaintiffs must demonstrate that the State had no reason to know of the meaning the Nation attributed to the Compact.  "A person has reason to know a fact … if he has information from which a person of ordinary intelligence would infer that the fact in question does or will exist" or "if the inference would be that there is such a substantial chance of the existence of the fact that, if exercising reasonable care …, the person would predicate his action upon the assumption of its possible existence."  *Restatement* §19 cmt. b.  Plaintiffs cannot possibly show they had no reason to know that the Nation would read the Compact to mean what any reasonable person would read it to mean.  *See* 5/7/13 Order 25 ("[N]o reasonable reading of the Compact could lead a person to conclude that it prohibited new casinos in the Phoenix area.").

## CONCLUSION

The Nation's motion for summary judgment should be granted in its entirety.

| | | |
|---|---|---|
| 1 | Dated: May 29, 2013 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/ Danielle Spinelli |
| 4 | | Jonathan Jantzen,<br>    Attorney General, SBN 016220 |
| 5 | | Samuel Daughety,<br>    Assistant Attorney General, SBN 023170 |
| 6 | | Office of Attorney General |
| 7 | | TOHONO O'ODHAM NATION<br>P.O. Box 830 |
| 8 | | Sells, AZ  85634 |
| 9 | | Telephone: (520) 383-3410<br>jonathan.jantzen@tonation-nsn.gov |
| 10 | | samuel.daughety@tonation-nsn.gov |
| 11 | | Seth P. Waxman (*Pro hac vice*) |
| 12 | | Danielle Spinelli (*Pro hac vice*)<br>Annie L. Owens (*Pro hac vice*) |
| 13 | | Shivaprasad Nagaraj (*Pro hac vice*)<br>Sonya L. Lebsack (*Pro hac vice*) |
| 14 | | WILMER CUTLER PICKERING<br>    HALE AND DORR LLP |
| 15 | | 1875 Pennsylvania Avenue, N.W. |
| 16 | | Washington, D.C.  20006<br>Telephone:  (202) 663-6000 |
| 17 | | seth.waxman@wilmerhale.com |
| 18 | | danielle.spinelli@wilmerhale.com<br>annie.owens@wilmerhale.com |
| 19 | | shiva.nagaraj@wilmerhale.com<br>sonya.lebsack@wilmerhale.com |
| 20 | | |
| 21 | | Michael J. Rusing, SBN 006617<br>Todd M. Hardy, SBN 023675 |
| 22 | | RUSING LOPEZ & LIZARDI, PLLC |
| 23 | | 6363 N. Swan Road, Suite 151<br>Tucson, AZ  85718 |
| 24 | | (520) 792-4800<br>mrusing@rllaz.com |
| 25 | | thardy@rllaz.com |
| 26 | | *Counsel for Defendant Tohono O'odham Nation* |
| 27 | | |
| 28 | | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of May, 2013, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.

/s/ Danielle Spinelli
DANIELLE SPINELLI