**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

State of Arizona, et al.,

               Plaintiffs,

v.

Tohono O'odham Nation,

               Defendant.

No. CV-11-00296-PHX-DGC

**ORDER**

In an order dated May 7, 2013, the Court granted Defendant's motion for summary judgment with respect to all claims except breach of contract under § 201(2) of the Restatement of Contracts.  Doc. 216 at 27; Restatement (Second) of Contracts § 201(2) (1979) (hereinafter "Rst.").  The Court ordered additional briefing on two issues: (1) Does § 201(2) apply when a party's understanding of the contract is not reasonable?  (2) To which representatives of the State should the trier of fact look to decide what the State understood when the Compact was entered and what the Nation knew about the State's understanding?  Doc. 216 at 25.  The parties have provided the additional briefing.  Docs. 219-20, 223-24.  In addition, Plaintiffs have filed a motion for partial reconsideration which argues that the Court overlooked key evidence related to their claim for breach of contract under Restatement § 201(1).  Doc. 217.  The Nation filed a response to the motion at the Court's request.  Docs. 218, 221.

For reasons explained below, the Court concludes that §§ 201(1) and 201(2) cannot be used by Plaintiffs to establish an enforceable oral agreement that the Nation would not open a casino in the Phoenix metropolitan area.  The Court has already held

that the Compact between the State and the Nation includes no such agreement, and that even Plaintiffs' extrinsic evidence does not make the Compact's terms reasonably susceptible to such a reading.  Doc. 216.  The Court now concludes that the Compact is a fully integrated written agreement under Chapter 9 of the Restatement, and that such an agreement between the parties forecloses any separate oral agreement.  As a result, the Court will grant summary judgment in favor of the Nation on Plaintiffs' § 201(2) claim and deny Plaintiffs' motion for reconsideration on the § 201(1) claim.

## I.      Governing Law.

The Court previously determined that Arizona law governs interpretation of the Compact.  Doc. 216 at 13.  The Court stands by that decision.

Arizona courts follow the Restatement "[a]bsent Arizona law to the contrary."  *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 968 (Ariz. 1990).  In addressing the effect of a written contract and the role of extrinsic evidence, the Arizona Supreme Court has looked to Chapter 9 of the Restatement (Second) of Contracts for guidance.  *See Taylor v. State Farm Mutual Automobile Insurance Co.*, 854 P.2d 1134, 1138 (1993) (citing Rst. §§ 200, 212, 214).  When the Arizona Court of Appeals more recently had occasion to revisit these issues in *Long v. City of Glendale*, 93 P.3d 519, 528 (Ariz. Ct. App. 2004), it too found Chapter 9 of the Restatement to be instructive.

The parties' briefing cites to various provisions of Chapter 9 and to non-Arizona cases that have applied those provisions, but no party has considered the overall intent of Chapter 9 and the role of § 201 within that chapter.  Having done so with some care, the Court concludes that the integrated nature of the Compact is of paramount importance in this case, and that the role of § 201 in the face of such an integrated agreement is far more limited than Plaintiffs suggest.

## II.     Analysis.

### A.      Chapter 9 Introductory Note.

Chapter 9 of the Restatement concerns the very matter at issue in this case – the scope of the Compact.  The chapter is titled "The Scope Of Contractual Obligations."

Rst. ch. 9, intro. note.  The introductory note to Chapter 9 explains that "[w]here the parties have adopted a writing as the final expression of all or part of their agreement, interpretation *focuses on the writing*, and its terms may supersede other manifestations of intention."  *Id*. (emphasis added).  The introduction explains that Chapter 9 concerns the "process of interpreting and applying agreements" and includes "rules with respect to various aspects of the process."  *Id*.  The introduction even provides an apt example of when a separate oral agreement is superseded by a written contract:  "(1) the contract was integrated (§ 209); (2) the integration was complete (§ 210); (3) the oral term is inconsistent with the written agreement, is within its scope, does not bear on its interpretation, and would not naturally be omitted from the writing (§§ 213-16)."  *Id*.

### B.    Integration.

Topic 3 of Chapter 9 is titled "Effect Of Adoption Of A Writing."  The introductory note to Topic 3 emphasizes the importance of a fully integrated agreement: "In the interest of certainty and security of transactions, the law gives *special effect* to a writing adopted as a final expression of an agreement.  Such a writing is here referred to as an 'integrated agreement.'"  *Id*. (emphasis added).  The note then explains the effect of such an agreement:  "The principal effects of a binding integrated agreement are to focus interpretation on the meaning of the terms embodied in the writing (§ 212), to discharge prior inconsistent agreements, and, in a case of complete integration, to discharge prior agreements within its scope regardless of consistency (§ 213)."  *Id.*  Thus, if the Compact is fully integrated, the Court must focus on the meaning of its terms (as the Court did in its previous order), and the Compact discharges separate oral agreements, even those that might otherwise be considered consistent with the terms of the Compact.

Section 209 sets out the test to determine whether a particular agreement is fully integrated: "Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression."  Rst. § 209(3).  In this case, the completeness and

1    specificity of the Compact certainly suggests that it was intended by the parties to be a

2    fully integrated agreement.  In addition, § 25 of the Compact specifically states that it is

3    fully integrated:  "This Compact contains the entire agreement of the parties with respect

4    to the matters covered by this Compact and no other statement, agreement, or promise

5    made by any party, officer, or agent of any party shall be valid or binding."  Doc. 195-11

6    at 76.

7          Comment b to § 209 of the Restatement does recognize that a provision like § 25

8    of the Compact "may not be conclusive," but in this case Plaintiffs have presented no

9    evidence to suggest that the integration clause means anything other than what it says.

10   And § 209 makes clear that merely alleging the existence of a separate oral agreement

11   does not prove that a contract is not fully integrated:  "If the oral agreement contradicts

12   the writing, or if the writing is a complete integration, evidence of the oral agreement is

13   excluded[.]"  Rst. § 209, illus. 3.

14         The Court concludes that the Compact between the Nation and the State is fully

15   integrated.  This conclusion has important implications for the remainder of the Court's

16   analysis.

17         **C.**     **Interpretation of an Integrated Agreement.**

18         Multiple sections within Chapter 9 suggest that fully integrated agreements are to

19   be interpreted with strict adherence to the words used in the writing.  *See* Rst. §§ 212,

20   213, 216.   Restatement § 212 provides that "[t]he interpretation of an integrated

21   agreement is directed to the meaning of the terms of the writing."  *Id*. at § 212.  Although

22   Comment b of § 212 suggests that a plain meaning evaluation requires the consideration

23   of some extrinsic evidence to establish context, it warns that that "after the transaction

24   has been shown in all its length and breadth, the words of an integrated agreement remain

25   the most important evidence of intention."  *Id*. at § 212, cmt. b.  Comment c reiterates the

26   point, stating that extrinsic evidence of intentions or promises is permitted "so long as [it

27   is] used to show the meaning of the writing."  *Id*. at § 212, cmt. c.  Finally, and most

28   powerfully, the Restatement's parol evidence rule categorically states that an integrated

agreement "discharges prior agreements to the extent that it is inconsistent with them." *Id.* at § 213.

The Court has already considered Plaintiffs' extrinsic evidence and found that the language of the Compact is not reasonably susceptible to the meaning Plaintiffs propose. Citing § 201, Plaintiffs now assert that the Compact can be read to include an agreement not reasonably within the meaning of its words.  This argument is foreclosed by the Restatement.  Under Chapter 9, all separate agreements, both inconsistent (§ 213(1)) and consistent (§ 216(1)), are discharged by a fully integrated agreement.  *See* Rst. §§ 213, 216.[1]  Therefore, even if Plaintiffs could establish that a separate agreement existed between the State and the Nation, they could not enforce such an agreement in the face of the fully integrated Compact.

**D.    Section 201.**

Section 201 is titled "Whose Meaning Prevails."  Rst. § 201.  Plaintiffs contend that subsections (1) and (2) of the rule can apply to the facts surrounding the negotiations of the Compact.  The text of § 201 reads as follows:

> (1) Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.
>
> (2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
>
>     (a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or
>
>     (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.
>
> (3) Except as stated in this Section, neither party is bound by the meaning attached by the other, even though the result may be a failure of mutual assent.

---

[1] An exception exists for a consistent term that in the circumstances might naturally be omitted from the writing.  § 216(2)(b).  The Court has already found that this exception does not apply.  Doc. 216 at 21.

*Id.*  Plaintiffs argue that § 201(1) applies because the State and the Nation "attached the same meaning" to the Compact – no new casinos in the Phoenix area.  Even if the Nation did not attach that meaning to the Compact, Plaintiffs argue that § 201(2) applies because the Nation either knew or had reason to know that the State attached such a meaning to the Compact.

In the full context of Chapter 9, the Court concludes that § 201 has a more limited role than Plaintiffs contend.  The comments and illustrations to § 201(1) suggest that it applies when the parties agree that a particular contractual term has a meaning different from a meaning the law would impose.  Rst. § 201, cmt. c, illus. 1-3.  Comment c states that in Subsection (1) "the primary search is for a common meaning of the parties, *not a meaning imposed on them by the law*."  *Id.* (emphasis added).  The three illustrations for § 201(1) concern situations where the law could impose a meaning or result different from the parties' intent.  *See id.* at illus. 1-3.  This narrow reading of § 201(1) – that the parties' understanding controls over an interpretation that would otherwise be provided by statute – makes it inapplicable to this case.  Plaintiffs do not contend that the law imposes a meaning on a term of the Compact that is inconsistent with the parties' understanding of that term.

Even if § 201(1) cannot be limited to meanings imposed by law, the Court concludes from the intent of Chapter 9 that the parties' unexpressed understanding can be enforced under § 201(1) only if it can be grounded in some way in the parties' integrated agreement.   To hold otherwise – to adopt Plaintiffs' view that § 201(1) permits enforcement of a separate understanding that is not embodied in any way in the integrated agreement – would conflict with the limiting provisions of Chapter 9 and the "special effect" it gives to integrated agreements.   Such an interpretation would be directly contrary to Chapter 9's clear holding that a fully integrated agreement discharges separate oral agreements.  Rst. §§ 212, 213, 216.

Plaintiffs' interpretation of §201(2) is flawed for similar reasons.  Sections 212, 213, and 216 make clear that an unwritten agreement or understanding cannot alter the

terms of a fully integrated contract.  Illustration 2 to § 212 is particularly relevant to the argument made by Plaintiffs:

> In an integrated agreement A agrees to sell and B to buy certain patent rights.  A intends to sell only the rights under the British patent on a certain invention; B intends also to buy rights under American and French patents.  If A has reason to know that B intends to buy the American rights, B has reason to know that A does not intend to sell the French rights, *and the language used can be read to cover the British and American but not the French rights*, that may be determined to be the proper interpretation.

*Id*. at illus. 2 (emphasis added).  The italicized language makes clear that the meaning B has attached to the agreement can be enforced only if the language of the contract can be read to include that interpretation, even if A knows of B's interpretation.  In other words, § 201(2) does not operate independently of the words in the agreement.  It gives effect to one party's understanding only if the words of the agreement can be read to embrace that party's understanding.

The Court has already concluded that the words of the Compact cannot reasonably be read to include Plaintiffs' claimed ban on new casinos in Phoenix.  Thus, even if Plaintiffs' extrinsic evidence could show that the State had such an understanding and the Nation knew it did, § 201(2) could not be used to enforce the understanding.

So read, § 201(1) and § 201(2) are consistent with Chapter 9 and operate within the confines of the Restatement's special regard for fully integrated contracts.  Section 201 provides a tool for determining whose meaning will prevail when a fully integrated contract uses a term in a manner contrary to an established legal meaning (§ 201(1)), or when one party understands a term to mean something the term reasonably can be read to mean and the other party knows of the first party's understanding (§ 201(2)).  Neither of these uses permits evidence of a prior oral agreement to contradict the terms of a fully integrated contract, and neither aids Plaintiffs in this case.

### E.    Arizona Case Law.

This interpretation of the Restatement comports with Arizona case law.  In *Long*, the plaintiff donated several parcels of land to the City of Glendale subject to a deed

restriction that required the City to use the land for airport and municipal purposes.  93 P.3d at 524.  The deed permitted improvements for the operation of an airport.  *Id*.  When the City leased the land to a third party and it became clear that a second runway would not be built on one of the parcels, the plaintiff sued the city, arguing that the construction of a second runway on one of the parcels was the intent of the parties at the time the donation was made.  *Id*. at 527.  On appeal, he also argued that the trial court erred when it refused to consider extrinsic evidence of the parties' intent in donating and accepting the parcel.  *Id*. at  527.

*Long*  applied  Arizona's  parol  evidence  rule  and  concluded  that  the  plaintiff "offer[ed]  no  explanation  as  to  how  the  language  [in  the  relevant  clauses]  could  be interpreted  to  mean  that  the  City  was  obliged  to  construct  a  second  runway  on  the property."  *Id*. at 529.  The Court continued:

> Even assuming the parties intended [the parcel] to be used for a second runway, there must be something in the deed that would permit the court to find that the deed's language is amendable to an interpretation specifying that the property must be used only for that purpose.  In the absence of such language,  the  allegations  in  Long's  complaint  are  not sufficient  to  overcome  the  requirements  of  even  the  more permissive parol evidence rule adopted in Arizona.

*Id*.  The Arizona Court of Appeals clearly was concerned with a permissive approach to the  parol  evidence  rule  that  would  render  the  actual  terms  of  the  written  agreement superfluous.  Thus, even when the court assumed that the plaintiff's proffered meaning represented  the  parties'  actual  intent,  the  court  would  not  permit  extrinsic  evidence  to vary the terms of the agreement.

A  similar  sentiment  is  expressed  in  *Taylor*,  where  the  court  emphasized  that interpretation is "the process by which we determine the meaning of words in a contract" and that the parol evidence rule "prohibits extrinsic evidence to vary or contradict . . . the agreement."  854 P.2d at 1138.

Nothing in *Taylor* or *Long* suggests that evidence of a party's interpretation of an agreement  may  be  admitted  when  the  language  of  the  agreement  is  not  reasonably

susceptible to that interpretation.  Although neither case discussed § 201, the Court cannot conclude that Arizona courts would read § 201 in a manner that nullifies the Arizona parol evidence rule.  The Court accordingly concludes that its interpretation of § 201 is consistent with these Arizona cases.

F.    Summary.

The Compact between the State and the Nation is fully integrated.  It does not contain a ban on new casinos in the Phoenix area, and its terms cannot reasonably be read to include such a ban, even in the light of Plaintiffs' extrinsic evidence.  As a result, any evidence Plaintiffs might present of a separate oral understanding between the Nation and the State, or concerning the State's understanding of which the Nation was aware, must be excluded from the task of interpreting the Compact under Chapter 9 of the Restatement.  The fully integrated compact discharges any unwritten understandings.

**IT IS ORDERED:**

1.    Defendant's motion for summary judgment (Doc. 193) is **granted** on all claims, including the claim under Restatement § 201.

2.    Plaintiffs' motion for partial reconsideration (Doc. 217) is **denied**.

3.    The Clerk is ordered to terminate this action.

Dated this 25th day of June, 2013.

David G. Campbell
United States District Judge